IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JMJS, INC.**, d/b/a Coe Distributing | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:22cv1514 |
| | ) | **Electronic Filing** |
| **STANISLAUS IDZI** and **NDI OFFICE** | ) | |
| **FURNITURE, LLC**, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

JMJS, Inc., doing business as Coe Distributing ("plaintiff" or "COE"), commenced this action seeking redress for the alleged violation of a confidentiality agreement between it and defendant Stanislaus Idzi ("Idzi"), its previous employee and corporate officer. After separating from plaintiff, Idzi assumed a role at one of plaintiff's competitors that substantially was similar to the role he occupied for plaintiff. Plaintiff advances claims against both Idzi and his new employer, NDI Office Furniture ("NDI"), for violation of the Defend Trade Secrets Act, Pennsylvania's Uniform Trade Secrets Act (and common law), and unfair competition. It also advances a claim for breach of the duty of loyalty and fiduciary duty against Idzi. Presently before the court is NDI's motion to dismiss for lack of personal jurisdiction. For the reasons set forth below, the motion will be denied.

Plaintiff is a national office furniture distributor that sells furniture and accessories throughout the United States and the Caribbean. It utilizes three distribution centers in Pennsylvania, North Carolina and Texas. First Amended Complaint (Doc. No. 18) at ¶¶ 1-2. Idzi began his employment with plaintiff in January of 2011 in the position of Vice President of Sales and Merchandise and progressed to the position of Chief Product Development Officer

when he was terminated on January 19, 2022.  Idzi was a minority shareholder of plaintiff.  Id. at ¶ 3.[1]

NDI is an office furniture distributor that sells its furniture and accessories "throughout the continental United States."  Id. at ¶ 4.  NDI had and continues to have "regular contacts with the Commonwealth of Pennsylvania through its Territory Manager(s) and by doing business within and through the Commonwealth of Pennsylvania's borders."  Id. at ¶ 12.

NDI hired Idzi in May of 2022 "as Chief Operating Officer, a role much like his role at COE."  Id. at ¶ 5.  He continues to work for NDI in this position.  Id. at ¶ 9.

Plaintiff sells office furniture "to resellers in the United States and Caribbean through a network of outside office furniture representatives, in-house customer service representatives who support the office furniture representatives and communicate with the customers daily, and the distribution centers that coordinate delivery of the products . . . ."  Id. at ¶ 16.  An important aspect of its business is establishing and maintaining a network of customer accounts.  Id. at ¶ 17.

The office furniture industry is highly competitive.  Id. at ¶ 18.  Companies competing in this industry consistently attempt to develop favorable pricing, terms, product lines and related services so as to maintain a competitive advantage.  Id.

"To maintain its competitive position, COE creates, compiles and maintains 'Proprietary Information' related to its business.  Such information includes, among other things, marketing strategies; contact and vendor lists; customer lists; customer preferences; sales data; company financial data, including forecasts, sales incentive plans, strategic plans, compensation and

---

[1] Defendant notes that plaintiff continues to be a minority shareholder in plaintiff.

benefits; operational, distribution, logistical and procurement methods and strategies; propriety Information Technology; distributor relationships, programs and agreements; new strategic vendor relationships; product pricing; product costs; product sourcing; product profitability; product specification; product quality and performance; product design; new product development; and know-how associated with proprietary products offered by COE." Id. at ¶ 19. This proprietary information generally is unknown in the industry and plaintiff has invested a substantial amount in order create, develop and maintain it. Id. at ¶ 20. The information provides plaintiff with an economic advantage over its competitors. Id.

Plaintiff "maintains the 'Proprietary Information' as secret and takes steps to limit access to" it. Id. at ¶ 20. As part of this process, plaintiff "requires all of its employees to sign and adhere to a confidentiality agreement whereby each and every employee agrees to 'maintain and protect the secrecy of the Proprietary Information' during his or her employment with COE 'and after the termination thereof for any reason.'" Id. at ¶ 21. Idzi agreed to and signed one of these confidentiality agreements. Id. at ¶ 22.

Except with permission from plaintiff, Idzi's confidentiality agreement precludes him from disclosing the information, using the information for personal benefit or for the benefit of another entity or person, making copies of or duplicating the information, or permitting another person or entity to use or distribute the information. Id. at ¶ 23. Idzi also agreed not to retain or remove from plaintiff's premises any records, files, or other documents or copies thereof or any Proprietary Information whatsoever, and further agreed to return the same immediately upon termination of employment. Id. at ¶ 25.

As part of his employment, plaintiff "provided Idzi access to highly sensitive customer preference and customer project information; COE product and pricing information; and other

proprietary information relating to COE's manufacture, marketing, pricing strategy, sale and distribution of its products.  COE also approved Idzi's use of an external hard drive to download and repeatedly access COE's trade secrets and confidential trade information and create trade secrets and confidential trade information for COE work that no one other than Idzi could access."  Id. at ¶ 32.  This included "access to the most sensitive trade secrets and confidential trade information relating to COE's product, marketing, pricing, sales and distribution strategies" and participation in plaintiff's "executive team meetings where COE vendors, customers, accounts, and strategies (e.g., competitor analysis, customer acquisition, vendor negotiations, sales forecasts) were discussed and information was shared."  Id. at ¶ 33.

Prior to November of 2020, Idzi used an employer-purchased external hard drive to perform his work.  Id. at ¶ 34.  He "used the external hard drive to download and repeatedly access COE's trade secrets and confidential trade information and create trade secrets and confidential trade information for COE work that no one other than Idzi could access."  Id. at ¶ 35.

In November of 2020, Idzi purchased a new Samsung hard drive and submitted paperwork to plaintiff for reimbursement.  Id. at ¶¶ 36-37.  He then transferred the content of the external hard drive onto the Samsung hard drive and thereafter repeatedly used the Samsung hard drive to perform his work.  Id. at ¶¶ 39-40.  In doing so he "created trade secrets and confidential trade information on the Samsung hard drive, for [his work for plaintiff] that no one other than Idzi could access."  Id. at ¶ 40.

After his termination, at plaintiff's request Idzi through counsel verified that he had "identified in writing all of the COE 'Proprietary Information' in his possession and returned [the] same to COE."  Id. at ¶ 41.  He did not identify or return the Samsung hard drive.  Id. at ¶ 42.

In April of 2022, Idzi "resigned as an officer of" plaintiff.  Id. at ¶ 43.  One month later, he "assumed the roe of Chief Operating Officer at NDI."  Id. at 44.  He retained the Samsung hard drive throughout this time.  Id. at ¶¶ 43-44.

"NDI knew that Idzi was most recently employed by COE when NDI hired him."  Id. at ¶ 45.  NDI knew or in the alternative should have foreseen that Idzi was a party to a confidentiality agreement with plaintiff.  Id. at ¶ 46.

In August of 2022, plaintiff discovered that Idzi had failed to return the Samsung hard drive upon his termination.  Id. at ¶ 47.  Plaintiff's counsel then emailed counsel for both Idzi and NDI and inquired as to the whereabouts of the Samsung hard drive, and demanded that if the Samsung hard drive was in Idzi's possession, it be returned immediately due to good faith concerns that it contained trade secrets and confidential trade information.  Id. at ¶ 48.

Plaintiff's counsel first received a return email from defendants' counsel acknowledging the inquiry and agreeing to address the issue.  After further inquiry as to the status of the Samsung hard drive, defendants' counsel responded in pertinent part: "[W]e are arranging for the delivery of the external hard drive to a computer forensics vendor to make archival copies of the entire contents of the device, including metadata."  Counsel for defendants also indicated that upon proof that plaintiff had paid for the hard drive, it would be returned to plaintiff after it was imaged.  Id. at ¶¶ 49-50.

Defendants' counsel sent a September 8, 2022, email stating in pertinent part: "The good news for you is that the device is being secured and preserved, and is being isolated from Mr. Idzi…."  Id. at ¶ 51.  Plaintiff's counsel then requested confirmation that that Idzi "does not currently have access to or otherwise possess the COE hard drive or any of the COE hard drive contents."  Id. at ¶ 52.  Defense counsel replied on September 10, 2022, that "Mr. Idzi is sending

(or has sent) the device today by fed ex for delivery to bit-x-bit."  <u>Id.</u> at ¶ 53.  On September 14, 2022, defense counsel confirmed that bit-by-bit had received the Samsung hard drive.  <u>Id.</u> at ¶ 54.

After the return of the hard drive, plaintiff retained its own forensic vendor (Vestige) to examine its contents.  The examination revealed that it contained an extensive array of confidential and propriety information protected by the confidentiality agreement between plaintiff and Idzi.  <u>Id.</u> at ¶¶ 55-56.  It also revealed that the contents had been viewed, printed and possibly downloaded during the time Idzi had been working for NDI.  <u>Id.</u> at ¶ 57.

The Confidentiality Agreement contains a forum-selection clause in which Idzi agreed to submit to the personal jurisdiction of either the Court of Common Pleas of Allegheny County, Pennsylvania, or the United States District Court for the Western District of Pennsylvania.  The clause further provides that the venue for any action shall be in the County of Allegheny, Pennsylvania, as to "any dispute relating to this [Confidentiality Agreement]."  It also provides that the parties waive any objection to venue or jurisdiction "and any objection based on a more convenient forum in any dispute relating to this [Confidentiality Agreement]."  <u>Id.</u> at ¶ 24.

NDI mounts a full-scale attack on plaintiff's attempt to subject it to personal jurisdiction in this court.  It notes that it is not subject to general jurisdiction in Pennsylvania and it does not have minimum contacts to maintain specific jurisdiction under <u>International Shoe v. Washington</u>, 326 U.S. 310, 316 (1945).  Its sales into Pennsylvania amount to only a small fraction of its general distributions, and up until recently the bulk of these sales actually were made to plaintiff.  It further argues that plaintiff's allegations are threadbare and conclusory and therefore fall short of meeting its burden to produce facts that establish personal jurisdiction.  And plaintiff's factual

shortcomings include its inability to establish jurisdiction under the "closely-related party"

doctrine or the "<u>Calder</u> effects" test.  NDI therefore concludes that it is entitled to dismissal.

Plaintiff maintains that specific jurisdiction exists based on the forum selection clause in

the confidentiality agreement.  It highlights that the First Amended Complaint alleges both Idzi

and NDI accessed and used plaintiff's trade secrets to gain a competitive advantage and NDI is so

closely related to the present dispute between plaintiff and Idzi as to make the forum selection

clause enforceable against it.  Further, NDI assertedly directed its misappropriations directly at

plaintiff, and the harm from that conduct was suffered by plaintiff in the Commonwealth of

Pennsylvania.  The impact of that wrongful conduct thus satisfies the "<u>Calder</u> effects" test.

Plaintiff thus contends that personal jurisdiction can and should be exercised over NDI.

Plaintiff has averred sufficient facts to establish personal jurisdiction over NDI as a

closely-related party to the contractual parties and their dispute.  This doctrine can bind non-

signatories to a contractual forum selection clause and permit the exercise of jurisdiction by

consent.  Its application dispenses with the traditional forms of contact analysis undergirding the

application of general and specific *in personam* jurisdiction.

The above averments and the reasonable inferences that can be drawn therefrom provide

a sufficient factual foundation for deeming NDI to be a closely-related party and satisfy

plaintiff's burden at this juncture.  "It is widely accepted that non-signatory third-parties who are

closely related to [a] contractual relationship are bound by forum selection clauses contained in

the contracts underlying the relevant contractual relationship."  <u>Synthes, Inc. v. Emerge Medical,</u>

<u>Inc.</u>, 887 F. Supp.2d 598, 607 (E.D. Pa. 2012) (quoting <u>First Fin. Mgmt. Grp., Inc. v. Univ.</u>

<u>Painters of Balt., Inc.</u>, No. Civ. A.11–5821, 2012 WL 1150131, at *3 (E.D. Pa. Apr. 5, 2012) and

collecting cases); <u>accord</u> <u>Radian Guaranty Inc. v. Bolen</u>, 18 F. Supp.3d 635, 645 (E.D. Pa. 2014)

(same) (collecting cases).  The application of this principle turns on whether the third party

should have foreseen that it could become embroiled in the contractual dispute between the

signatories and be bound by their agreement.  Id. ("Third parties that 'should have foreseen

governance by the clause' may also be bound by it.") (quoting University Painters, 2012 WL

1150131, at *3); In re Mcgraw-Hill Global Education Holdings, LLC, 909 F. 3d 48, 64 (3d Cir.

2018) ("Foreseeability is a prerequisite to applying the closely related parties doctrine.  That is,

before binding a non-signatory as a closely related party, we require a finding that enforcement

of the clause by or against the non-signatory would be foreseeable.").

Foreseeability can extend to a third party becoming a related party to a contractual

relationship, the existence of a forum selection clause in the underlying contract and the forum

selection clause providing a convenient forum for the benefit of one of the contracting parties.  In

re Mcgraw-Hill Global Education Holdings, LLC, 909 F.3d at 65.  "A foreseeability finding in

the context of forum selection clauses must have some evidentiary basis, other than pure

speculation, that the party sought to be bound had an awareness of the clause, its contents, and

that it might be [] invoked."  Id.

Foreseeability does not require a finding that the forum selection clause and its contents

were communicated to the party against whom enforcement is sought.  Id.  What is required "is

that the actual forum be foreseeable, and that there be some evidentiary basis for such a finding."

Id.

Courts have recognized a third party's conduct to be "closely related" to a contractual

relationship or dispute - and thus bound the third parties to forum selection clauses - in a wide

variety of situations.  Synthes, 887 F. Supp.2d at 607 (collecting cases).  "Ultimately, 'it is clear

from these cases that courts considering this question of whether a non-signatory may be bound

by a forum selection clause take a common sense, totality of the circumstances approach that essentially inquires into whether, in light of those circumstances, it is fair and reasonable to bind a non-party to the forum selection clause.'" Id. (quoting Regions Bank v. Wyndham Hotel Mgmt., Inc., 2010 WL 908753, at *6 (M.D. Tenn. Mar. 12, 2010)).  "[T]his approach places emphasis on whether it should have been reasonably foreseeable to the non-signatory that situations might arise in which the non-signatory would become involved in the relevant contract dispute." Id.

Here, it was foreseeable to NDI that it could become embroiled in a contractual dispute between plaintiff and Idzi and the contractual dispute could bind NDI to defend or litigate in Western Pennsylvania.  Plaintiff is a national office furniture distributor selling furniture and accessories throughout the United States with one of its three distribution centers in Pennsylvania.  Plaintiff is incorporated in and has its principal place of business in Western Pennsylvania.

The furniture distribution business is a highly competitive industry, with numerous companies vying for market share.  Complaint at ¶ 18.  Plaintiff creates, compiles and maintains proprietary information related to its business and distribution transactions to maintain its competitive advantage.  Plaintiff utilizes a confidentiality agreement between itself and its employees to preclude the use of its proprietary information to its competitive disadvantage.

NDI is a direct competitor of plaintiff and competes for a market share within the national marketplace.  Because the ability to gain market share within the industry is highly competitive, it would be foreseeable to NDI that its competitors would attempt to protect their proprietary information bearing on marketing strategies, sales data and product distribution.  It is a common practice for entities within such competitive markets to do so through the use of

restrictive confidentiality and non-compete agreements between themselves and their employees and officers.  Cf. Synthes, 887 F. Supp.2d at 607-616 (surveying wide array of contractual disputes applying the closely-related party doctrine); Matthews International Corp. v. Lombardi, et al., 2:20cv89, Doc. No. 58 at p. 9-11 (same).  It also is a common practice to utilize forum selection clauses in such agreements and to require a forum convenient to the employer, such as the location of their place of incorporation or principal place of business.  Id.

Idzi worked for plaintiff for over eleven years.  He was an officer in and a minority shareholder of plaintiff.  He held sensitive and high-ranking positions as Vice President of Sales and Merchandise and the Chief Product Development Officer.  It was foreseeable to NDI that in all likelihood he would have been required to execute confidentiality and/or non-compete agreements as part of occupying such prominent positions within the company.

Idzi was terminated from his employment with plaintiff in January of 2022.  Idzi resigned as a corporate officer in plaintiff in April of 2022.  Within four months of termination and one of resignation, Idzi "assumed the role of Chief Operating Officer at NDI," a position that was both high-ranking and substantially similar to his role and functions at plaintiff.

It is reasonable to infer that NDI engaged in due diligence prior to permitting Idzi to assume the position of Chief Operating Officer.  It is also reasonable to infer that NDI was well aware of Idzi's prior employment history, which encompassed eleven years with one of NDI's direct competitors.  After all, NDI placed Idzi into a very similar role to the one he performed with plaintiff.  And it is reasonable to infer that NDI would have explored whether Idzi was bound by prior contractual provisions between himself and plaintiff.  Indeed, such restrictions would be foreseeable in such a competitive industry, and this would be particularly so for high-ranking employees and officers of the company such as Idzi.

10

It follows that the factual backdrop pled in the First Amended Complaint leading to Idzi's assumption of a role with NDI substantially similar to the one he held with plaintiff, coupled with the reasonable inferences that can be drawn therefrom, provide a sufficient evidentiary basis to find that NDI was aware of the confidentiality agreement between Idzi and plaintiff and the limitations and impact it could have on Idzi's performance as Chief Operating Officer for NDI. It also provides a sufficient evidentiary basis to find that NDI could foresee that becoming embroiled in any dispute would result in the invocation of the forum selection clause to resolve the entirety of the dispute in Allegheny County, Pennsylvania.

Moreover, Idzi was a high-ranking corporate officer for plaintiff and NDI placed Idzi into a substantially similar role with top responsibility over NDI's operations.  Actions by such officers frequently are imputed to the entity.  Plaintiff obtained forensic evidence indicating Idzi utilized the information on the Sumsung hard drive during his operations at NDI.  That information consisted of proprietary data, information and formulas developed by Idzi for use in plaintiff's distribution operations.  Given that Idzi could no longer utilize the information for plaintiff's benefit, it is logical to infer that Idzi utilized the proprietary information essentially for the only purpose for which he could – for NDI's benefit.

It follows that NDI is faced with the reality that one of its high-ranking officers accessed contractually protected information in a manner that breached the restrictive agreement.  And it is reasonable the NDI could foresee that it would be haled into court pursuant to the forum-selection clause in that agreement under such circumstances as part of the litigation resolving whether NDI received a benefit as a result of its officer's breach.  In other words, it is a third party who is closely related to one of the parties to the contractual agreement and the contracting parties' dispute.

11

Finally, any question as to NDI's ability to foresee the invocation of and attempt to enforce the confidentiality agreement against it was extinguished by the events that ensued once plaintiff became aware that Idzi had not returned the Samsung hard drive.  Plaintiff placed NDI and Idzi on notice that the hard drive had not been returned and plaintiff was seeking its recovery.  Assuming against the logical inferences raised by plaintiff's averments of fact that this was the first time NDI became aware of the fact that Idzi had possession of the hard drive, it gained actual knowledge that Idzi possessed an electronic storage device that belonged to plaintiff.  Its corporate officer then took steps to make a forensic copy of the device without authorization from plaintiff to do so.  By the actions of its officer, NDI presumably then came to have responsibility for having unauthorized access to and/or possessing a copy of plaintiff's proprietary information.  NDI certainly could foresee that any contractual agreement plaintiff had with Idzi would be invoked against it in an effort to obtain redress for the entire reach of the unauthorized access.  And it would be foreseeable that a forum selection clause in the agreement would be invoked against NDI as part of that effort.

The factual averments of the First Amended Complaint, when considered in conjunction with the reasonable inferences that can be draw therefrom in plaintiff's favor, sufficiently demonstrate the NDI could foresee becoming a related party to the contractual relationship between plaintiff and Idzi, that their agreement contained a forum selection clause and that the forum selection clause provided a convenient forum for the benefit of plaintiff.  Given Idzi's termination as an employee and resignation as an officer for one of its major competitors, and its decision to move ahead with placing Idzi into a comparable role within just a few months, and the discovery of the unauthorized retention of the Samsung hard drive followed by the unauthorized copying of its content, NDI could foresee and should have expected to be haled

into court pursuant the contractual obligations between plaintiff and Idzi.  Thus, it has consented to jurisdiction and venue in this court.

NDI's contentions to the contrary are unavailing.  NDI insists that plaintiff must produce facts that demonstrate the confidentiality agreement was disclosed to it before it took the actions giving rise to the lawsuit in order for it to be deemed a related party.  In this regard NDI also notes that plaintiff has failed to allege that NDI took an active role in soliciting or contacting Idzi prior to his separation from plaintiff or in Idzi's retention of the hard drive.  But our Court of Appeals has declined to impose an actual notice and/or "reasonably communicated" requirement in this setting, and instead requires only that "[a] foreseeability finding in the context of forum selection clauses must have some evidentiary basis, other than pure speculation, that the party sought to be bound had an awareness of the clause, its contents, and that it might be defensively invoked."  In re Mcgraw-Hill, 909 F.3d at 66.

As Judge Ranjan observed: in considering whether a third party is sufficiently related to a particular dispute, a corporate defendant's lack of knowledge concerning a restrictive agreement "does not end the inquiry."  Lombardi, 2:20cv89, Doc. No. 58 at p. 10 (quoting C.H. Robinson Worldwide, Inc. v. Rodriguez, No. 12–264, 2012 WL 4856245, at *5-*6 (D. Minn. Oct. 12, 2012)).  Instead, "the proper inquiry is whether, 'the third party reasonably should foresee being bound by the forum selection clause because of its relationships to the cause of action and the signatory to the forum selection clause.'"  Id. (quoting C.H. Robinson Worldwide, 2012 WL 4856245 at *6 (quoting Medtronic, Inc. v. Endologix, Inc., 530 F. Supp. 2d 1054, 1057 (D. Minn. 2008)).

As set forth above, the factual averments of plaintiff's complaint when construed in the light most favorable to plaintiff, coupled with the reasonable inferences drawn therefrom,

sufficiently meet the applicable standards.[2]  Idzi was a high-ranking officer of NDI during the entire time the actionable conduct took place.  Plaintiff is in possession of electronic data that supports an inference that Idzi was accessing plaintiff's sales data and formulas while seeking to advance NDI's sales.  When confronted with a request for the return of the device holding plaintiff's trade secrets, NDI's corporate officer made an unauthorized copy of device.  Idzi and NDI continue to have access to the content of the device.  Under these facts, it is reasonable to bind NDI to the forum selection clause.

---

[2]  Motions to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) require the court to accept as true the allegations of the pleadings and all reasonable inferences therefrom, and to resolve all factual disputes in favor of the plaintiff.  Synthes, 887 F. Supp.2d at 605 (citing Fed. R. Civ. P. 12(b)(2) and Pinker v. Roche Holdings Ltd., 292 F.3d 361, 368 (3d Cir. 2002)).  The court's review is not, however, limited to "the pleadings"; instead, it must consider any affidavits submitted by the parties.  Id. (citing Scott v. Lackey, No. Civ.A.02–1586, 2005 WL 2035598, at *1–2 (M.D. Pa. Aug. 11, 2005)).

   Although a defendant has the initial burden of raising the lack of personal jurisdiction, once the defense is raised the burden shifts to the plaintiff to demonstrate facts that suffice to support the exercise of jurisdiction.  Id. (citing Provident Nat. Bank v. Cal. Fed. Sav. & Loan Ass'n, 819 F.2d 434, 437 (3d Cir. 1987); Cumberland Truck Equip. Co. v. Detroit Diesel Corp., 401 F. Supp.2d 415, 418 (E.D. Pa. 2005)).  A plaintiff may do so through affidavits or competent evidence that show sufficient contacts with the forum state to establish personal jurisdiction.  Id. (citing De Lage Landen Fin. Servs., Inc. v. Rasa Floors, LP, No. Civ.A.08–0533, 2008 WL 4822033, at *3 (E.D. Pa. Nov. 4, 2008).  Such contacts must be established with "reasonable particularity," but need only amount to a *prima facie* case in favor of personal jurisdiction.  Id. (citing Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992) (quoting Provident, 819 F.2d at 437).  If the plaintiff meets this burden, the defendant must then establish the presence of other considerations that would render jurisdiction unreasonable.  Id. (citing De Lage Landen Fin. Servs., 2008 WL 4822033, at *3 and Carteret Sav. Bank v. Shushan, 954 F.2d 141, 150 (3d Cir. 1992)).

   NDI's insistence that plaintiff must come forward with additional facts showing it had sufficient contacts with Pennsylvania improperly discounts the factual allegations of the First Amended Complaint and the reasonable inferences therefrom, which are not displaced simply because defendant submitted an affidavit indicating it does not have the requisite contacts with Pennsylvania under the traditional framework for general or specific jurisdiction.

Similarly, NDI's contention that the case law requires a factual showing that the third party knew it actively was participating in the breach is unavailing.  The "common sense, totality of the circumstances approach . . . places emphasis on whether it should have been reasonably foreseeable to the non-signatory that situations might arise in which the non-signatory would become involved in the relevant contractual dispute."  Synthes, 887 F. Supp.2d at 607.  A survey of the caselaw reveals that "[c]ourts have deemed a third party's conduct to be 'closely related' to a contractual relationship or dispute - and thus bound the third parties to forum selection clauses - in a wide variety of situations."  Id. (collecting cases).  The "common thread" running through the cases is "that the close business relationships between the signatories and non-signatories to the pertinent agreements, together with the fact that the dispute among the parties center[s] on the interpretation of the agreements, provide[s] a sufficient basis on which to apply the forum selection clauses to the non-signatory."  Id. at 610.  And it is "the present close relationship between the parties, not the relationship at the time the contract was signed" that provides the proper point of focus.  Id. at 613 (analyzing University Painters, 2012 WL 1150131 at *4).

Plaintiff's averments of fact in the First Amended Complaint as viewed under the proper standards supply a sufficient factual foundation to support a finding that at present, NDI is a closely related party to the contracting parties and their dispute.  NDI could reasonably foresee enforcement of the parties' forum selection clause against it with regard to its role in the dispute or any benefit it received by operation of its officer's conduct.  Consequently, plaintiff has met it burden of establishing jurisdiction over NDI by operation of consent.

Date: September 26, 2023

> s/David Stewart Cercone
> David Stewart Cercone
> Senior United States District Judge

cc:    Douglas J. Feichtner, Esquire
        Jeffrey M. Stacko, Esquire
        Scott Michael Hare, Esquire
        Anthony Thomas Gestrich, Esquire
        Jordan Nicole Kelly, Esquire

        (*Via CM/ECF Electronic Mail*)

16